## No. 24-10545

In The

# United States Court of Appeals for the Eleventh Circuit

———————————

Elisabeth Koletas
*Plaintiff-Appellant*

v.

United States of America
*Defendant-Appellee*

———————————

On Appeal from the
United States District Court for the Middle District of Florida
Hon. Sheri Polster Chappell
Case No. 2:23-CV-733-SPC-KCD

———————————

**OPENING BRIEF OF PLAINTIFF-APPELLANT ELISABETH KOLETAS**

———————————

Jonathan Corbett, Esq.
**CORBETT RIGHTS, P.C.**
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
Phone: (310) 684-3870
FAX: (310) 675-7080
E-mail: jon@corbettrights.com
*Attorney for Plaintiff-Appellant*

***ORAL ARGUMENTS REQUESTED***

## <u>CERTIFICATE OF INTERESTED PERSONS &</u>

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The parties are Elisabeth Koletas and United States of America. The trial judge was U.S.D.J. Sheri Polster Chappell. Ms. Koletas was represented by Leah Farrell of Corbett Rights, P.C. in the district court and Jonathan Corbett of the same in this Court. The United States was represented by Kevin R. Huguele of the U.S. Department of Justice in the district court and Daniel J. Aguilar of the same in this Court. No other parties are known to have an interest in this case.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This case presents an important issue regarding the scope of sovereign immunity on which the district court diverged from all four Courts of Appeals with published decisions on the same. Appellant respectfully requests oral arguments.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS & CORPORATE DISCLOSURE STATEMENT ....................................................................................2

STATEMENT REGARDING ORAL ARGUMENT ...............................................2

TABLE OF CONTENTS.......................................................................................3

TABLE OF AUTHORITIES .................................................................................4

JURISDICTIONAL STATEMENT .......................................................................6

INTRODUCTION .................................................................................................6

STATEMENT OF THE ISSUE .............................................................................8

STATEMENT OF THE CASE ..............................................................................8

    I.    Statement of Facts ...................................................................................8

    II.   Proceedings in the Court Below................................................................9

    III.  Standard of Review ...............................................................................11

SUMMARY OF THE ARGUMENT ....................................................................11

ARGUMENT .....................................................................................................12

    I.    Any Ambiguity In The FTCA's Waiver of Sovereign Immunity Is To Be Construed Broadly ......................................................................................12

    II.   Transportation Security Officers are "Officers of the United States" ........15

    III.  TSA Searches Are "Searches" ...............................................................19

    IV.  TSA Searches Are "For Violations of Federal Law"................................24

CONCLUSION ...................................................................................................27

CERTIFICATE OF COMPLIANCE....................................................................28

CERTIFICATE OF SERVICE ............................................................................29

## TABLE OF AUTHORITIES

Cases

*Bunch v. United States*, 880 F.3d 938 (7th Cir. 2018)................................................13

*Bunch v. United States*, 880 F.3d 938, 944-45 (7th Cir. 2018)................................14

*Canyon Fuel Co. v. Sec'y of Labor*, 894 F.3d 1279, 1289 (10th Cir. 2018)............19

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481 (2006).................................. 12, 13, 14, 15

*EEOC v. First National Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980).....24

*Egbert v. Boule*, 596 U.S. 482 (2022)................................................................ 10, 12

*FAA v. Cooper*, 566 U.S. 284, 290 (2012).............................................................14

*Fin. Oversight and Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo*, 598
　U.S. 339, 346 (2023)............................................................................................14

*Lane v. Pena*, 518 U.S. 187, 192 (1996)................................................................14

*Leuthauser v. United States*, 71 F.4th 1189 (9th Cir. 2023).................. 7, 11, 13, 18

*Mengert v. United States*, Case No. 23-5100............................................................7

*Millbrook v. United States*, 569 U.S. 50, 55 (2013) ..............................................14

*Millbrook*, 569 U.S. at 55......................................................................................23

*Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633
　F.3d 1297, 1313 (11th Cir. 2011) .......................................................................11

*Osmon v. United States*, 66 F.4th 144 (4th Cir. 2023).................................... passim

*Ramsingh v. TSA*, 40 F.4th 625, 628-29 (D.C. Cir. 2022)......................................24

*Solomon v. United States*, 559 F.2d 309, 310 (5th Cir. 1977) (*per curiam*).............24

*Terry v. Ohio*, 392 U.S. 1 (1968) ..........................................................................21

*U.S. v. Aukai*, 497 F.3d 955, 961 (9th Cir. 2007) ..................................................24

*Vanderklok v. United States*, 868 F.3d 189, 207 (3d Cir. 2017)............................16

*Wilson v. United States*, 959 F.2d 12, 15 (2nd Cir. 1992) (*per curiam*)..................24

*Yates v. United States*, 135 S. Ct. 1074, 1082 (2015)............................................16

Statutes

18 U.S.C. § 115(c)(1)................................................................26

28 U.S.C. § 1291......................................................................6

28 U.S.C. § 1331......................................................................6

28 U.S.C. § 2679(b)(1).............................................................6

28 U.S.C. § 2680(h) ..........................................................passim

49 U.S.C. § 44901(a) .............................................................20

49 U.S.C. § 44902....................................................................20

49 U.S.C. § 46505....................................................................25

5 U.S.C. § 8331(20) ..............................................................26

## JURISDICTIONAL STATEMENT

This is an appeal of a final order of a U.S. District Court entered February 20th, 2024, for which a Notice of Appeal was filed on that same day. The district court had federal question jurisdiction under 28 U.S.C. § 1331. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1291.

## INTRODUCTION

Plaintiff-Appellant was strip searched at an airport by an officer of the Transportation Security Administration ("TSA") because of a small amount of tissue in her underwear intended to mitigate pregnancy-related bleeding. Despite thousands of women passing through TSA checkpoints wearing some form of feminine hygiene product every day without being subject to abuse, for reasons that are still unclear, Plaintiff-Appellant was ordered to enter a room wherein she was forced her to lift up her dress, after which the officer pulled down her underwear.

There is no dispute that TSA's screening officers are not authorized by law to require travelers to submit to strip searches, and certainly not to undress a traveler by their own hands. This was, plainly, a sexual assault. But because Plaintiff-Appellant's attacker was working for the federal government at the time of the assault, her sole remedy is against the United States. *See* 28 U.S.C. § 2679(b)(1).

Pursuant to the Federal Tort Claims Act, remedies for most intentional torts, including battery and false arrest, are only available when committed by "investigative or law enforcement officers," which the statute defines as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Four Courts of Appeals have written published opinions on this issue and all four have held that TSA screeners meet this definition[1]. *Pellegrino v. Transp. Sec. Admin.*, 937 F.3d 164 (3rd Cir. 2019) (*en banc*); *Iverson v. United States*, 973 F.3d 843 (8th Cir. 2020); *Osmon v. United States*, 66 F.4th 144 (4th Cir. 2023); *Leuthauser v. United States*, 71 F.4th 1189 (9th Cir. 2023). One Court of Appeals has written an unpublished, non-precedential, *per curiam* opinion in a case argued by a *pro se* appellant without the benefit of oral argument, and that decision went the other way. Unfortunately, that Court of Appeals was the Eleventh Circuit. *Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690 (11th Cir. 2014) (*unpublished*).

Despite the non-binding nature of this decision, the district court failed to even acknowledge the four other circuits and dismissed Plaintiff-Appellant's case. The Court now has the opportunity to correct its prior mistake, as well as the district

---

[1] At the time of filing, the issue is also fully briefed, and oral arguments were held, in the Tenth Circuit. *Mengert v. United States*, Case No. 23-5100.

court's, and allow a remedy to those injured by intentional misconduct at TSA checkpoints as Congress intended.

## STATEMENT OF THE ISSUE

Are Transportation Security Officers "investigative or law enforcement officers" under the Federal Tort Claims Act?

## STATEMENT OF THE CASE

### I.    Statement of Facts

On June 23rd, 2022, Plaintiff-Appellant was a ticketed passenger flying from Southwest Florida International Airport (RSW). Compl. (App'x A007 - A015), ¶¶ 8, 9. She was pregnant on that date and arrived at the security line in a wheelchair. *Id*., ¶¶ 11, 12. Due to her pregnancy, she asked to be screened by pat-down search instead of via body scanner, which uses small amounts of radiation to screen passengers, and she wished to avoid exposing her unborn child to any radiation. *Id*., ¶¶ 14, 15. TSA policy affords passengers the right to opt for a pat-down search in lieu of body scanner screening and they obliged her. *Id*., ¶¶ 16.

The pat-down was conducted by a Transportation Security Officer[2] ("TSO") named "Sarno." *Id*. TSO Sarno spent a substantial amount of time touching

---

[2] TSOs, as well as lead and supervisory TSOs (LTSOs and STSOs, respectively), are the familiar blue-shirted screening officers who interact with travelers and check

Plaintiff-Appellant's groin area, apparently taking exception to a small amount of toilet paper present in her underwear to mitigate pregnancy-related bleeding. *Id.*, ¶ 13, 17. TSO Sarno ordered Plaintiff-Appellant to a private room. *Id.*, ¶¶ 22, 24.

TSO Sarno returned with a supervisory TSO (STSO) named "Shane." *Id.*, ¶ 24. STSO Shane continued the probing at Plaintiff-Appellant's vaginal area, and then directed her to lift her dress to expose her underwear. *Id.*, ¶¶ 24 - 26. She objected and suggested that she could simply remove the toilet Paper. *Id.*, ¶ 27. STSO Shane stated this was not an option, so Plaintiff-Appellant complied. STSO Shane then pulled down Plaintiff-Appellant's underwear and exposed her genitals. *Id.*, ¶ 30. No prohibited items were found, and she was allowed to leave. *Id.*, ¶ 31.

TSA policy explicitly prohibits airport checkpoint strip searches, and under no circumstance are its officers there permitted to remove travelers' clothing using their own hands. *Id.*, ¶ 38.

## II.    <u>Proceedings in the Court Below</u>

Plaintiff filed a claim notice pursuant to the Federal Tort Claims Act's presentation requirement on September 22nd, 2022. Compl. (App'x A007 - A015), ¶ 44. When the government failed to respond within the six-month window allowed

---

IDs, screen baggage, run metal detectors and body scanners, and pat-down travelers. It is undisputed that they are not "law enforcement officers."

by the FTCA, she filed suit against the United States on September 13th, 2023. *Id.* Her complaint alleged four causes of action – battery, false imprisonment, intentional infliction of emotional distress, and negligence – all via the FTCA[3]. Id., ¶¶ 48 - 70.

The government responded with a motion to dismiss on December 12th, 2023, solely on the grounds of sovereign immunity, because, they argue, TSOs are not "investigative or law enforcement officers" and therefore their intentional torts – and torts derivative of the same – are barred by 28 U.S.C. § 2680(h). Mot. to Dismiss, App'x 016. Plaintiff opposed that motion on January 8th, 2024. Opp. to Mot. to Dismiss, App'x 045. In the Middle District of Florida, parties must obtain leave to file a reply brief on a motion, and the Court ordered that both parties may file a reply on January 12th, 2024. The government's reply was filed on January 19th, 2024. Reply to Opp. to Mot. to Dismiss, App'x 059. Plaintiff's surreply was filed on February 2nd, 2024. Sur-Reply to Mot. to Dismiss, Appx. 064.

On February 20th, 2024, the Court granted the government's motion, holding that TSOs are not "Officers of the United States." Order on Mot. to Dismiss, App'x

---

[3] The FTCA is effectively the sole means by which a person injured by a TSA screener may recover in court. *Bivens* claims against TSA screeners are no longer available after *Egbert v. Boule*, 596 U.S. 482 (2022), and the Westfall Act, 28 U.S.C. § 2679, precludes tort claims brought directly against screeners acting within the scope of their employment.

068.  A timely notice of appeal was filed that same day.  Dist. Ct. Docket, App'x

006.

### III.    <u>Standard of Review</u>

The Court reviews *de novo* a district court's determination of sovereign

immunity. *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*,

633 F.3d 1297, 1313 (11th Cir. 2011).


<u>SUMMARY OF THE ARGUMENT</u>

The relevant statute contains an internal definition of "investigative or law

enforcement officer" which reads: "any officer of the United States who is

empowered by law to execute searches, to seize evidence, or to make arrests for

violations of Federal law."  28 U.S.C. § 2680(h).  All four courts with published

opinions on this issue have held that TSOs are officers of the United States, that they

are empowered by law to execute searches, and to the extent that the "for violations

of Federal law" clause modifies "execute searches," that, too, applies to TSOs.

*Pellegrino*; *Iverson*; *Osmon*; *Leuthauser*.

But, in 2014, this Court issued an unpublished, *per curiam* decision holding

that TSOs are not "officers of the United States."  *Corbett*.  Whether because the

issues before it were not properly sharpened by the *pro se* appellant in that case,

because oral arguments were not held, due to shifts in jurisprudential practice, or

otherwise, no court has agreed with this one in the ten years since that decision. Since the near-total abrogation of *Bivens* in *Egbert*, if the Court does not correct this mistake, travelers will have no judicial remedy for abuse by rogue officers at the checkpoint, no matter how egregious the conduct nor how severe the injury. The panel is invited to publish an opinion disavowing its unpublished holding and ensuring that residents of Alabama, Florida, and Georgia have the same rights as those in the remaining states and in accordance with the plain words of Congress.

## ARGUMENT

### I. Any Ambiguity In The FTCA's Waiver of Sovereign Immunity Is To Be Construed Broadly

Before parsing the words of the law enforcement proviso, the Court should consider the Supreme Court's holding that where there is doubt, the FTCA is to be broadly construed in favor of affording a remedy for torts committed by government employees. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481 (2006). In *Dolan*, the Supreme Court explicitly stated that the FTCA "does not implicate the general rule that 'a waiver of the Government's sovereign immunity will be strictly construed ... in favor of the sovereign,'" because Congress intentionally worded the FTCA to waive sovereign immunity using "sweeping language." *Id*. at 491; Opp. to Mot. to Dismiss,

App'x 047 – 049; *c.f.* Motion to Dismiss, App'x 020, 021 (insisting that the general rule applies); Reply to Motion to Dismiss, App'x 059 - 063.

All four circuits with published opinions on whether Transportation Security Officers are covered by the law enforcement proviso have held that the text of § 2680(h) was unambiguous (and that TSOs *are* covered). *Pellegrino*, 937 F.3d at 179 ("Here, however, the text tells the tale."); *Iverson*, 973 F.3d at 853 ("It is not ambiguous.); *Osmon*, 66 F.4th at 150 ("the 'plain language' of this statute supplies a clear answer"); *Leuthauser*, 71 F.4th at 1199, fn. 4 ("Because the statutory text is unambiguous, we do not apply a rule of construction in favor of (or against) immunity.").

Two of those circuit courts went further and held that even if there were ambiguity, then *Dolan* must be faithfully applied to construe that ambiguity broadly in favor of affording a remedy. *Pellegrino v. U.S. Transp. Sec. Admin.*, 937 F.3d at 171 ("Even if there were uncertainty about the reach of the term 'officer of the United States,' it would be resolved in favor of a broad scope."); *Iverson v. United States*, 973 F.3d at 854 ("Our analysis here is consistent with the Supreme Court's instructions and our sister circuits' [broad] interpretations.");

Two other cases are instructive. In *Bunch v. United States*, 880 F.3d 938 (7th Cir. 2018), the Seventh Circuit interpreted whether ATF investigators were covered by the law enforcement proviso refused to apply strict construction. *Bunch*, 990

F.3d at 944-45 ("As we construe this language, we must bear in mind the Supreme Court's insistence that we not construe the waiver of sovereign immunity in the FTCA too strictly.").  And, in *Millbrook v. United States*, 569 U.S. 50, 55 (2013), the Supreme Court refused to "read into the text additional limitations designed to narrow the scope of the law enforcement proviso." *Millbrook*, 569 U.S. at 55.  On the other hand, the three cases cited by the government in their Motion to Dismiss are <u>not</u> instructive because they do not deal with the Federal Tort Claims Act.  App'x 020. 021, <u>*citing*</u> *FAA v. Cooper*, 566 U.S. 284, 290 (2012); *Fin. Oversight and Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo*, 598 U.S. 339, 346 (2023); *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Tellingly, the only Court of Appeals to hold that TSA screening officers are not "investigative or law enforcement officers" entirely neglected to engage with *Dolan*.  A review of the briefs of the parties in *Corbett* – in which that plaintiff-appellant appeared *pro se* – shows that *Dolan* was not brought to the court's attention by either party, perhaps leading to its erroneously narrow construction of the waiver provided by the law enforcement proviso.  Worse, the court below not only neglected to consider the breadth of construction required when interpreting this statute, but also even whether there was ambiguity in the statute's wording, *despite* both parties raising the issue.  <u>*See*</u>, *generally*, Order Granting Motion to Dismiss, App'x 068-073 (words "broad," "narrow," "ambiguity," "ambiguous," and "Dolan" not present).

The Court should hold that § 2680(h) is unambiguous and refuse to "read into the text additional limitations," but to the extent any ambiguity is present, all relevant case law makes clear that this ambiguity does not get the "narrow construction" treatment because the FTCA as a general matter is intended to broadly waive sovereign immunity. *Dolan* at 546 U.S. 491.

## II.    <u>Transportation Security Officers are "Officers of the United States"</u>

The Eleventh Circuit in *Corbett* found that Transportation Security Officers of the United States Transportation Security Administration are not "officers of the United States." *Corbett* at 700-02. That court reasoned that we must distinguish "officers" from "employees" and that the law enforcement proviso cannot apply to the latter. *Id*.

As a threshold matter, TSA screening officers, including the ones who injured Plaintiff, hold the title "Transportation Security Officer, and TSOs wear uniforms

with badges that prominently display the title 'US Officer[4].'" *Pellegrino* at 170. The phrase "Officer of the United States" is undeniably more broad than "Law Enforcement Officer of the United States," and in both traditional and contemporary usage of the word "officer" harmonizes with the role TSA screening officers perform:

> "'Ordinarily, a word's usage accords with its dictionary definition.' *Yates v. United States*, 135 S. Ct. 1074, 1082 (2015). Under one prominent dictionary definition shortly before 1974, the year of the proviso's enactment, an officer 'serve[s] in a position of trust' or 'authority,' especially as 'provided for by law.' *Officer*, Webster's Third New International Dictionary (1971); *see also Officer*, Black's Law Dictionary (4th ed. rev. 1968) ('[A]n officer is one holding a position of trust and authority…'). TSOs satisfy this definition, as they are 'tasked with assisting in a critical aspect of national security — securing our nation's airports and air traffic.' *Vanderklok v. United States*, 868 F.3d 189, 207 (3d Cir. 2017). To take another definition from the time, officers are 'charged' by the Government 'with the power and duty of exercising

---

[4] It should be noted that TSA purposely added "Officer" badges to their checkpoint screeners' uniforms in 2008 to command respect from the public. *See Pellegrino* at 170, fn. 1. The badge on the left is that of a TSO. The badge on the right is that of a TSA federal law enforcement officer (air marshal). One is an "Officer of the United States" and the other is not??




certain functions . . . to be exercised for the public benefit.' *Officer*, Black's Law Dictionary, *supra*. TSOs qualify under this definition as well, as they perform 'the screening of all passengers and property,' 49 U.S.C. § 44901(a), to protect travelers from hijackings, acts of terror, and other threats to public safety. For good reason, the role is Transportation Security Officer, and TSOs wear uniforms with badges that prominently display the title 'Officer.' Hence they are 'officer[s]' under the proviso."

*Pellegrino* at 170.  *Iverson* held the same:

> "We also conclude that TSOs are officers. They are 'charged with a duty,' *Officer*, Webster's Third New Int'l Dictionary (1971), and 'charged by a superior power ... with the power and duty of exercising certain functions.' *Officer*, Black's Law Dictionary (4th ed., rev. 1968). Congress, by statute, charged TSOs with the power to conduct airport screenings. See 49 U.S.C. § 44901.
>
> "Those screenings are a 'function[ ] of the government ... exercised for the public benefit.' *Officer*, Black's Law Dictionary (4th ed., rev. 1968). Specifically, the screenings ensure that no passenger enters a plane with a prohibited item, including 'weapons, explosives, and incendiaries.' 49 C.F.R. § 1540.5 (defining 'Screening function'). This function protects passenger safety and national security.
>
> "Further, TSOs 'serve in a position of ... authority.' *Officer*, Webster's Third New Int'l Dictionary (1971). The TSA holds them out to the public as officers through their title and uniforms. It does so to ensure the public respects them."

*Iverson* at 848. As did *Leuthauser*:

> "A TSO easily satisfies dictionary definitions of *officer* at the time of the proviso's enactment in 1974. See, e.g., *Officer*, Webster's Third New International Dictionary (1971) (defining *officer* as 'one charged with a duty' and 'one who is appointed or elected to serve in a position of trust, authority, or command esp. as specif. provided for by law'); *Officer*, Black's Law Dictionary (4th ed. rev. 1968) (defining *officer* as '[o]ne who is charged by a superior power (and particularly by government) with the power and duty of exercising certain functions' or '[o]ne who is invested with some portion of the functions of the government to be exercised for the public benefit'); *accord Pellegrino*, 937 F.3d at 170; *Iverson*, 973 F.3d at 848.

"And while not dispositive, the government represents TSOs to the public as officers by their title and uniforms, which include badges displaying the title 'US Officer.' That screeners are titled, uniformed, and badged as "officers" reinforces our conclusion that they are 'officers of the United States' as understood in ordinary parlance. Therefore, based on its ordinary meaning, the proviso's reference to any officer of the United States includes TSOs."

*Leuthauser*, 71 F.4th at 1194.

The *Osmon* court did not decide the issue because the government *abandoned it*, perhaps because since this Court's holding in *Corbett*, no other court had adopted that logic. *Osmon*, 66 F.4th at 147-48 ("the government has not challenged the magistrate judge's conclusion that TSA screeners are "officers of the United States" within the meaning of the law enforcement proviso. This means the only appellate decision favoring the government's position—an unpublished and unsigned decision issued without oral argument—rested on grounds the government no longer advances," *citing Corbett*).

In the court below, the government relied on the definition of "officer" preferred by dissenting opinion of *Pellegrino*. Motion to Dismiss, App'x 023, *citing Pellegrino*, 937 F.3d 189 (Krause, J, *dissenting*). The *Pellegrino* dissent eschewed the majority opinion's use of contemporary editions of Black's Law Dictionary and Webster's Third New International Dictionary to adopt Webster's New Collegiate Dictionary or The Random House Dictionary of the English Language's definitions, which were "one charged with police duties" and "A policeman or constable," respectively. *Id.* The puzzling choice of Webster's collegiate dictionary over their

premiere version, or Random House's dictionary over Black's Law Dictionary, notwithstanding, adopting the definitions preferred by the government would mean that when Congress said "investigative or law enforcement officers," they intended to cover the exact same group of people as if they had only said "law enforcement officers." This converts the words "investigative or" into surplusage. When possible, "we should interpret the standard to give effect to each word and clause." *Canyon Fuel Co. v. Sec'y of Labor*, 894 F.3d 1279, 1289 (10th Cir. 2018).

The court below did not cite a dictionary, and simply intuited by looking at what "other Federal statutes [] tell us" that since TSOs are distinct from law enforcement officers, they are not "Officers of the United States" as contemplated by § 2680(h). Motion to Dismiss, App'x 071, 072. As did the *Pellegrino* dissent, this too converts "investigative or" into surplusage, and further errs by attempting to construe a statute by looking outside of its text without first determining whether the text has plain meaning.

### III.   TSA Searches Are "Searches"

Although the court below stopped after finding TSOs are not "officers" and did not interpret the remainder of § 2680(h), the Court should complete the analysis in order to determine the question presented in this appeal. The remainder of § 2680(h) requires the federal officer to be "empowered by law to execute searches,

to seize evidence, or to make arrests for violations of Federal law." "Because the law enforcement proviso 'speaks in the disjunctive,' TSA screeners need be empowered only to do one of the three listed things—that is, execute searches, seize evidence, or make arrests." *Osmon*, 66 F.4th at 148.

The most obvious[5] on the list is "execute searches," as a TSO's job is *almost exclusively* that of executing searches of both passengers and their property, as required by federal law codified in several statutes and regulations. 49 U.S.C. § 44901(a) requires "the screening of all passengers and property." 49 U.S.C. § 44902 requires TSA to promulgate regulations to deny boarding to "a passenger who does not consent to a search[6] under" §44901(a). TSA implemented §§ 44901 and 44902 with, *inter alia*, 49 C.F.R. § 1540.107(a), which provides that no one may "board an aircraft without submitting to the screening and inspection of his or her person and accessible property." And it is the TSO – like the one who injured Plaintiff-Appellant – whose role is charged with carrying these searches out. *Iverson* at 851 ("Congress

---

[5] *Contra* to what the government argued was "undisputed" in the court below, Mot. to Dismiss, App'x 028, TSOs also "seize evidence." Obviously, if TSA discovers a gun, bomb, drugs, or other contraband, they do not hand it back to the passenger while they wait for law enforcement with arrest powers to arrive; they seize it. A seizure being brief does not negate the fact that it was a seizure. Notwithstanding, the "execute searches" clause is more straightforward and is dispositive.

[6] TSA's enabling statutes vacillate between describing this work as "searches," "screenings," "examinations," and "inspections." The statutes appear to use these words entirely interchangeably, but it matters not: just as a police officer cannot evade a search warrant requirement by describing their conduct as a "screening" or "inspection," TSA is plainly "searching" whether they call it that or not.

thus mandated that TSOs carry out screenings and authorized physical searches as one means to complete that duty. The statute specifically authorizes federal employees, TSOs, to screen passengers and property. We consider this sufficient to conclude that they are empowered by law to conduct searches.").

"*Searches* is neither an obscure word nor is its meaning doubtful." *Iverson* at 853 (refusing to resort to canons of construction[7] to define "searches" when the meaning is already plain); <u>*see also*</u> *Iverson* at 854 (refusing to resort to legislative history for the same reason).  Notwithstanding, the government asked the court below to limit the scope of "execute searches" in the proviso to those "related to traditional law enforcement" searches.  Mot. to Dismiss, App'x 028. This cramped definition rests on a foundation – supposed context clues – that is simply too dainty to support contradicting the ordinary, plain meaning applied to the words Congress chose.  "TSO screenings are 'searches' (i) as a matter of ordinary meaning, (ii) under the Fourth Amendment, and (iii) under the definition provided in *Terry v. Ohio*, 392 U.S. 1 (1968). Attempts to distinguish (iv) between administrative and criminal 'searches' are divorced from the plain text, and any distinction, if one must be made, should account for (v) the fact that TSA searches extend to the general public and

---

[7] Resorting to canons of construction would not be particularly helpful to the government anyway.  The *Pellegrino* court indulged the government's insistence that *noscitur a sociis* resolves the statutory scope in their favor and found the canon to be "of little help" because the phrases are listed in the disjunctive.  *Pellegrino* at 174, 175.

involve examinations of an individual's physical person and her property."
*Pellegrino* at 172.

The government essentially asks the Court to modify the text of the statute to cover only "criminal searches" or "law enforcement searches."  By effectively inserting the words "criminal law enforcement" between the words "execute" and "searches" in § 2680(h), the government hopes to distinguish between its checkpoint screening officers on the one hand and its law enforcement officers (*e.g.*, Federal Air Marshalls) on the other hand, as the district court did.  Order Granting Mot. to Dismiss, App'x 070, 071.  But the text of the law plainly makes no such distinction[8], there is no principled reason why that distinction *should* be made, and in fact, the addition of the words "investigative or" make crystal clear that Congress intended *more* than law enforcement searches to be covered by the proviso.  Both TSA checkpoint screening officers *and* TSA law enforcement officers fit comfortably under the "investigative or law enforcement officer" umbrella.

The *Osmon* court put it succinctly:

---

[8] The *Iverson* court went a step further and found that *even if* the law did intend a "criminal searches" context, TSA screeners *do* conduct searches in the criminal context because they are searching for contraband, the possession of which may be a criminal offense.  "Under a heading indicating that it is discussing 'Criminal Law,' Black's defines a *search* as '[a]n examination of a man's ... person, with a view to the discovery of contraband or illicit or stolen property.' *Search*, Black's Law Dictionary (4th ed., rev. 1968). As discussed above, TSOs are given the power to execute physical searches, such as pat downs, with the intent of finding weapons, explosives, or other prohibited items. So even in the criminal context, TSOs' screenings constitute *searches*." *Iverson* at 853.

"The problem with the government's argument is that it reprises a tactic the Supreme Court has already rejected: 'read[ing] into the text additional limitations designed to narrow the scope of the law enforcement proviso.' *Millbrook*, 569 U.S. at 55, 133 S.Ct. 1441. The word 'criminal' appears nowhere in the law enforcement proviso—let alone as a modifier of 'searches.' See 28 U.S.C. § 2680(h). Here, as elsewhere, we 'may not narrow a provision's reach by inserting words Congress chose to omit.' *Lomax v. Ortiz-Marquez*, — U.S. —, 140 S. Ct. 1721, 1725, 207 L.Ed.2d 132 (2020).

*Osmon* at 148, 149; *see also Leuthauser* at 1199 ("Here, the meaning of execute searches is plain, and the substantive connection among the terms execute searches, seize evidence, and make arrests is not so tight or so self-evident as to demand that we rob any one of them of its independent and ordinary significance.") (*quotations and citations omitted*).

The *Iverson* court took this a step further and found, *arguendo*, that even if Congress intended some connection to a criminal search context when it drafted § 2680(h), TSOs functionally have that connection. *Iverson*, 973 F.3d at 853 ("Even if the terms do limit each other and execute searches in the proviso has a law enforcement connotation, TSOs satisfy that definition. … As discussed above, TSOs are given the power to execute physical searches, such as pat downs, with the intent of finding weapons, explosives, or other prohibited items. So even in the criminal context, TSOs' screenings constitute searches.")

Undeterred, the government pointed the court below to three cases where they allege the tortfeasors were similar to TSA screening officers yet found not to be

"empowered by law" to "execute searches."  Mot. to Dismiss, App'x 038, 039, *citing*

*Wilson v. United States*, 959 F.2d 12, 15 (2nd Cir. 1992) (*per curiam*) (parole

officers); *EEOC v. First National Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir.

1980) (Equal Employment Opportunity Commission agent); *Solomon v. United*

*States*, 559 F.2d 309, 310 (5th Cir. 1977) (*per curiam*) (security guard at military

exchange).   But, the *Pellegrino* court reviewed these cases and had no problem

rejecting them as comparable to TSA screening officers because looking at "each

job's statutory duties against the three duties listed in the proviso," it was clear that

TSA screening officers do what parole officers (who operate based on consent[9]),

EEOC agents (who merely review documents), and security guards (who are not

empowered by law to do anything) do not, and that is "execute searches."  *Pellegrino*

at 175; *see also Leuthauser* at 1197.


### IV.    TSA Searches Are "For Violations of Federal Law"

The government also argued that we should look to the "for violations of

Federal law" clause as instructive.  App'x 035, 036.  This argument borders on silly,

as TSA screening officers are clearly looking "for violations of Federal law" when

---

[9] Some courts used to describe TSA searches as based on consent.  But, "once an individual has begun the screening process, he or she must complete it." *Ramsingh v. TSA*, 40 F.4th 625, 629 (D.C. Cir. 2022).  TSA searches are not consent searches. *See also U.S. v. Aukai*, 497 F.3d 955, 961 (9th Cir. 2007) ("consent is not required").

they are conducting their searches. Weapons and explosives are banned from entering the secure area of the airport by federal law. 49 U.S.C. § 46505 (possession subject to *criminal* penalties). Surely it is not the government's position that "preventing weapons from entering" is anything but of paramount importance on the list of daily tasks for a TSA screener. It is indisputable that bringing a gun past the checkpoint is a violation of federal law and that TSA's searches are aimed at stopping that violation of federal law. And, even for prohibited-but-not-a-crime-to-possess items, such as water bottles over 3.4 oz, it is still federal law that they may not enter. "The phrase 'for violations of Federal law' sweeps notably broader than other statutes that specify violations of *criminal* law." *Pellegrino*[10] at 177.

Just because a TSO, upon uncovering a violation of federal law, must contact a law enforcement official to make the arrest, does not mean that the search itself was not intended to find violations of federal law. Just because a TSO may *also* be looking for items that are merely "prohibited" by federal law, even if the items are not contraband subjecting the person in possession to *criminal* penalties, from entering the secure area does not mean the "search" is not looking "for a violation of federal law." And, if Congress had intended "violations of Federal law," to be limited only to violations of federal *criminal* law, they have shown that they are

---

[10] After failing at this argument in *Pellegrino*, TSA opted not to make it in *Iverson*. <u>See</u> *Iverson* at 853, fn. 3. It is unclear why they have brought it back in this case, as no Court of Appeals has ever accepted it.

more than able to make such a distinction. _See_ 18 U.S.C. § 115(c)(1) ("any violation of Federal criminal law"); 5 U.S.C. § 8331(20) ("offenses against the criminal laws of the United States"). Congress here was simply trying to distinguish between those who are searching pursuant to _state_ law versus those who are searching pursuant to _federal_ law. TSOs are unquestionably the latter.

Finally, "the phrase 'for violations of Federal law' may not even apply to the power to 'execute searches.' When interpreting a statute that includes a list of terms or phrases followed by a limiting clause, that clause should ordinarily be read as modifying only the noun or phrase that it immediately follows." _Pellegrino_ at 177 (_cleaned up_).

.

## **<u>CONCLUSION</u>**

TSOs are "officers of the United States," they "execute searches," and these searches are designed to uncover "violations of Federal law."  Accordingly, sovereign immunity has been waived, Plaintiff-Appellant has properly stated a claim, and the Court should reverse and remand for a trial on whether she was illegally strip searched at the hands of officers of the federal government.

Dated:    Atlanta, GA          Respectfully submitted,
          April 1st, 2024

_____/s/Jonathan Corbett_____
Jonathan Corbett, Esq.
**CORBETT RIGHTS, P.C.**
*Attorney for Elisabeth Koletas*
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX: (310) 675-7080

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type volume limit of Fed. R. App P. 27(d)(2)(A) because it contains approximately 5,900 words. This document complies with the type face and style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it uses a 14-point proportionally spaced font.

Dated:     Atlanta, GA
            April 1ˢᵗ, 2024

Respectfully submitted,

_____*/s/Jonathan Corbett*_____
Jonathan Corbett, Esq.
**CORBETT RIGHTS, P.C.**
*Attorney for Elisabeth Koletas*
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX: (310) 675-7080

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan Corbett, certify that on April 1st, 2024, I effected service of this brief upon all appellees by using the CM/ECF system.

Dated:       Atlanta, GA                    Respectfully submitted,
             April 1st, 2024

                                           _____/s/Jonathan Corbett_____
                                           Jonathan Corbett, Esq.
                                           **CORBETT RIGHTS, P.C.**
                                           *Attorney for Elisabeth Koletas*
                                           5551 Hollywood Blvd., Suite 1248
                                           Los Angeles, CA 90028
                                           E-mail: jon@corbettrights.com
                                           Phone: (310) 684-3870
                                           FAX: (310) 675-7080