No. 24-10545

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————————————

Elisabeth Koletas,

Plaintiff-Appellant,

v.

United States of America,

Defendant-Appellee.

————————————

On Appeal from the United States District Court
for the Middle District of Florida

————————————

**APPELLEE BRIEF FOR THE UNITED STATES**

————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

ROGER B. HANDBERG
  *United States Attorney*

SHARON SWINGLE
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5432*

*Koletas v. United States, No. 24-10545*

## AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendant-Appellee the United States certify that in addition to the persons listed in appellant's opening brief, the following persons and entities have an interest in the outcome of this appeal:

Brian M. Boynton

Corbett Rights, P.C.

Magistrate Judge Kyle C. Dudek

Roger B. Handberg

Transportation Security Officer Sarno

Supervising Transportation Security Officer Shane

Sharon Swingle

United States Department of Justice

I further certify that, to the best of my knowledge, no publicly traded company or corporation has an interest in the outcome of this case of appeal.

*/s/ Daniel Aguilar*
Daniel Aguilar
Counsel for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

The district court's decision should be affirmed for the reasons stated by the district court, advanced by the United States, and explained by this Court in *Corbett v. TSA*, 568 F. App'x 690, 698-702 (11th Cir. 2014) (per curiam).  The United States stands ready to present oral argument if the Court would find it useful.

**TABLE OF CONTENTS** <u>**Page**</u>

INTRODUCTION ................................................................. 1

STATEMENT OF JURISDICTION ...................................... 2

STATEMENT OF THE ISSUE ............................................ 3

STATEMENT OF THE CASE ............................................. 3

I.     Statutory Framework ............................................... 3

       1.     The Federal Tort Claims Act ........................ 3

       2.     The Statutory Authority For TSA ............... 6

II.    Factual Background and Prior Proceedings ........... 10

III.   Standard of Review ............................................. 13

SUMMARY OF ARGUMENT ........................................ 13

ARGUMENT .................................................................. 15

Congress Has Not Waived Sovereign Immunity For Intentional Torts
Committed By TSA Screeners .................................... 15

       A.     The FTCA's Intentional Tort Exception Waives Immunity
              For "Investigative Or Law Enforcement Officers" Who
              Possess Traditional Police Powers ........................... 18

       B.     TSA Screeners Are Not "Investigative Or Law
              Enforcement Officers" Under 28 U.S.C. § 2680(h) .............. 33

       C.     28 U.S.C. § 2680(h) Bars All Of Koletas's Claims ................ 43

CONCLUSION ............................................................... 45

CERTIFICATES OF COMPLIANCE AND SERVICE

STATUTORY ADDENDUM

## TABLE OF CITATIONS*

**Cases:**                                                                **Page(s)**

*Bonner v. City of Prichard,*

   661 F.2d 1206 (11th Cir. 1981) (en banc) ................................... 21

*Buchanan v. Barr,*

   71 F.4th 1003 (D.C. Cir. 2023) ................................................ 36

*Bunch v. United States,*

   880 F.3d 938 (7th Cir. 2018) .................................................. 32

*Caban v. United States,*

   671 F.2d 1230 (2d Cir. 1982) ................................................. 20

*Celestine v. United States,*

   841 F.2d 851 (8th Cir. 1988) (per curiam) ............................... 20

*City of Indianapolis v. Edmond,*

   531 U.S. 32 (2000) ............................................................. 35

*City of Los Angeles v. Patel,*

   576 U.S. 409 (2015) ........................................................... 30

*Clark v. Martinez,*

   543 U.S. 371 (2005) ........................................................... 29

---

* Asterisks mark the authorities we primarily rely upon.  11th Cir. R. 28-1(e).

*Constien v. United States*,

  628 F.3d 1207 (10th Cir. 2010) ............................................................ 2, 3

*\*Corbett v. TSA*,

  568 F. App'x 690 (11th Cir. 2014) (per curiam) ................ 12, 14, 15, 21, 23,

                                                          24, 33, 35

*Corbett v. TSA*,

  767 F.3d 1171 (11th Cir. 2014) ................................................................ 11

*Dolan v. United States Postal Service*,

  546 U.S. 481 (2006) ................................................................ 27, 28, 40

*Dotson v. United States*,

  30 F.4th 1259 (11th Cir. 2022) ........................................... 17, 18, 19, 40, 41

*\*EEOC v. First National Bank of Jackson*,

  614 F.2d 1004 (5th Cir. 1980).................................................. 14, 21, 22, 35

*\*FAA v. Cooper*,

  566 U.S. 284 (2012) ........................................... 2, 15, 17, 18, 31, 36, 40, 41

*Gutierrez de Martinez v. Lamagno*,

  515 U.S. 417 (1995) ................................................................ 17

*Hernandez v. Lattimore*,

  612 F.2d 61 (2d Cir. 1979) ................................................................ 20

iv

*Hernandez v. United States,*

  34 F. Supp. 3d 1168 (D. Colo. 2014)  ................................................... 9, 34

*Iverson v. United States,*

  973 F.3d 843 (8th Cir. 2020) .................................................. 16, 25, 31, 35

*Jeffries v. United States,*

  721 F.3d 1008 (8th Cir. 2013) .................................................................... 3

*Kircher v. Putnam Funds Trust,*

  547 U.S. 633 (2006) .................................................................................. 36

*Leuthauser v. United States,*

  71 F.4th 1189 (9th Cir. 2023) ............................................................. 16, 36

*Leuthauser v. United States,*

  2020 WL 4677296 (D. Nev. Aug. 12, 2020) ............................................. 10

*Los Angeles County v. Rettele,*

  550 U.S. 609 (2007)  ................................................................................ 30

*Loughrin v. United States,*

  573 U.S. 351 (2014) .................................................................................. 23

*Metz v. United States,*

  788 F.2d 1528 (11th Cir. 1986)  ......................................................... 43, 44

*Moore v. United States,*

  213 F.3d 705 (D.C. Cir. 2000) ................................................................. 20

v

*National Treasury Employees Union v. Von Raab*,

    489 U.S. 656 (1989) .................................................................. 34

*Nurse v. United States*,

    226 F.3d 996 (9th Cir. 2000) ................................................. 20

*Omnipol, A.S. v. Multinational Defense Services, LLC*,

    32 F.4th 1298 (11th Cir. 2022) ................................................ 37

*Osmon v. United States*,

    66 F.4th 144 (4th Cir. 2023) ....................................... 16, 36, 40

*Paresky v. United States*,

    995 F.3d 1281 (11th Cir. 2021) .................................... 26, 42-43

*Pellegrino v. TSA*,

    896 F.3d 207 & n.24 (3d Cir. 2018) ....................................... 16

*Pellegrino v. TSA*,

    937 F.3d 164 (3d Cir. 2019) (en banc) ................. 16, 24, 25, 26, 29, 30, 31,

                                         35, 36, 37, 39

*Ramsingh v. TSA*,

    40 F.4th 625 (D.C. Cir. 2022) ........................................... 10, 11

*Savage Services Corp. v. United States*,

    25 F.4th 925 (11th Cir. 2022) ...................................... 18, 24, 39

*Shivers v. United States*,

   1 F.4th 924 (11th Cir. 2021) ...................................................................... 42

*Smith v. United States*,

   14 F.4th 1228 (11th Cir. 2021) ..................................................... 13, 38, 39

*\*Solomon v. United States*,

   559 F.2d 309 (5th Cir. 1977) (per curiam) ............................ 14, 22, 35, 38

*Stone v. Commissioner of Internal Revenue*,

   86 F.4th 1320 (11th Cir. 2023) .................................................................. 43

*Turner ex rel. Turner v. United States*,

   514 F.3d 1194 (11th Cir. 2008) ................................................................. 18

*United States v. $70,670.00 in U.S. Currency*,

   929 F.3d 1293 (11th Cir. 2019) ................................................................. 43

*United States v. Aukai*,

   497 F.3d 955 (9th Cir. 2007) (en banc) .............................................. 8, 34

*United States v. Dawson*,

   64 F.4th 1227 (11th Cir. 2023) .................................................................. 37

*United States v. Herzbrun*,

   723 F.2d 773 (11th Cir. 1984) ................................................................... 11

*United States v. Miles*,

   75 F.4th 1213 (11th Cir. 2023) .................................................................. 28

*United States v. Ramirez,*

    523 U.S. 65 (1998) ................................................................. 30

*United States v. Sherwood,*

    312 U.S. 584 (1941) ............................................................... 18

*Vanderklok v. United States,*

    868 F.3d 189 (3d Cir. 2017) .................................................. 8, 9

*Vanderklok v. United States,*

    142 F. Supp. 3d 356 (E.D. Pa. 2015) ...................................... 7

*Welch v. Huntleigh USA Corp.,*

    2005 WL 1864296 (D. Ore. Aug. 4, 2005) ............................ 34

*Wilson v. United States,*

    959 F.2d 12 (2d Cir. 1992) .............................................. 22, 35

*Zelaya v. United States,*

    781 F.3d 1315 (11th Cir. 2015) ................................... 19, 40, 43

**Statutes:**

Aviation and Transportation Security Act,
    Pub. L. No. 107-71, 115 Stat. 597 (2001) ................................ 7

18 U.S.C. § 846 ...................................................................... 32

18 U.S.C. § 2510(7) ................................................................ 24

21 U.S.C. § 374(a)(1) ......................................................... 22, 38

28 U.S.C. § 1291 ................................................................ 2

28 U.S.C. § 1346 ........................................................... 11, 12

28 U.S.C. § 1346(a)(1) .................................................... 26, 27

28 U.S.C. § 1346(b)(1) ......................................................... 3

28 U.S.C. § 2679 ............................................................... 37

28 U.S.C. § 2680 ........................................... 3, 4, 23, 27, 1

28 U.S.C. § 2680(a), (e) .................................................. 23, 42

28 U.S.C. § 2680(b) ....................................................... 27, 40

*28 U.S.C. § 2680(h) ..................... 1, 2, 4, 12, 13, 14, 15, 16, 17, 18, 19, 22, 24,

25, 28, 29, 32, 38, 40, 43, 44

29 U.S.C. § 657(a)(2) ...................................................... 22, 38

42 U.S.C. § 6927(a) ........................................................ 22, 38

49 U.S.C. § 114(e) ............................................................ 33

49 U.S.C. § 114(e)(2)-(4) ...................................................... 7

49 U.S.C. § 114(p) ........................................................ 14, 38

49 U.S.C. § 114(p)(1) ....................................................... 7, 33

49 U.S.C. § 114(p)(2) ....................................................... 9, 33

49 U.S.C. § 114(p)(2)(A)-(C) .................................................. 7

49 U.S.C. § 114(p)(3) .......................................................... 8

49 U.S.C. § 114(p)(4) .......................................................... 8

49 U.S.C. § 44901(a) ........................................................... 7, 33

49 U.S.C. § 44901(h)(2) ...................................................... 9

49 U.S.C. § 44902(a)(1) ...................................................... 7

49 U.S.C. § 44903(c)(1) ...................................................... 9

49 U.S.C. § 44904(a) ........................................................... 7

49 U.S.C. § 44920(a) ........................................................... 38

50 U.S.C. § 1809(b) ............................................................. 24

**Rules:**

11th Cir. R. 28-5 .................................................................. 2

Fed. R. App. P. 4(a)(1)(B)(i), (a)(7)(A)(ii) ...................... 2

Fed. R. App. P. 4(a)(7)(B)

Fed. R. Civ. P. 58 ............................................................... 2

Fed. R. Civ. P. 58(c)(2)(B) ................................................ 2

27 C.F.R. §§ 55.11, 55.31 (1995) ................................... 32

28 C.F.R. § 2.40(a)(12) (1992) ......................................... 22

49 C.F.R. § 1542.215 ......................................................... 9

67 Fed. Reg. 8340 (Feb. 22, 2002) ............................... 9, 34

81 Fed. Reg. 11364 (March 3, 2016) ............................. 11

**Other:**

120 Cong. Rec. 5287 (1974) ......................................................... 31

Jack Boger, Mark Gitenstein & Paul R. Verkuil, *The Federal Tort Claims*

    *Act Intentional Torts Amendment: An Interpretative Analysis*,

    54 N.C. L. Rev. 497 (1976) ........................................................ 5

*Federal Tort Claims Amendments:*

    *Hearings on H.R. 10439 Before the Subcomm. on Claims &*

    *Governmental Relations of the H. Comm. on the Judiciary*,

    93d Cong. 18 (1974) ............................................................. 6, 31

Antonin Scalia & Bryan A. Garner,

    *Reading Law: The Interpretation of Legal Texts* (2012) ............... 26, 28

S. Rep. No. 93-588 (1973) ........................................... 4, 5, 6, 20

TSA, *TSA Management Directive No. 1100.88-1* (May 7, 2007),

    https://perma.cc/W5WH-MRBJ ............................................... 8

TSA, *What Can I Bring?*,

    https://perma.cc/Q4ME-6KQ3 ................................................ 9

## INTRODUCTION

Plaintiff Elisabeth Koletas sued the United States under the Federal Tort Claims Act (FTCA), alleging tortious conduct by security screeners employed by the Transportation Security Administration (TSA). The district court dismissed the complaint, holding that Congress had not clearly waived the United States' sovereign immunity for such tort claims, and thus concluded that the court lacked jurisdiction to adjudicate them. That holding is correct and consistent with this Court's decision in *Corbett v. TSA*, 568 F. App'x 690, 698-702 (11th Cir. 2014) (per curiam), which similarly held that district courts lacked jurisdiction over materially identical claims.

Koletas's claims are premised on alleged intentional torts committed by federal employees. In enacting the FTCA, Congress chose to generally retain the United States' sovereign immunity for such intentional torts. 28 U.S.C. § 2680(h). And when there has not been a waiver of sovereign immunity, district courts lack jurisdiction over claims against the United States. Koletas's theory of jurisdiction rests on a limited exception for certain intentional torts committed by federal "investigative or law enforcement officers," which Congress has defined as those federal officers "empowered by law to execute searches, to seize evidence, or to make

arrests for violations of Federal law." *Id.* Because TSA screeners lack that authority and are not designated by TSA as law enforcement officers, they are not "investigative or law enforcement officers" under the statute. That conclusion is reinforced by long-settled law that Congress must use unequivocal language to waive sovereign immunity, and that the courts will adopt plausible readings of statutes that retain sovereign immunity. *FAA v. Cooper*, 566 U.S. 284, 294 (2012).

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under the FTCA. *See* Dkt. 1 at 2.[1] On February 20, 2024, the district court dismissed plaintiff's complaint for lack of jurisdiction. Dkt. 24 at 1, 5-6. Plaintiff filed a notice of appeal the same day. Dkt. 26. This Court has jurisdiction over that final order of dismissal. 28 U.S.C. § 1291.[2]

---

[1] References to the record are to the district court's docket number and to the page number of that document assigned by the court reporter. 11th Cir. R. 28-5.

[2] The district court did not enter a separate judgment of dismissal to accompany its order dismissing the complaint. *See* Fed. R. Civ. P. 58. Ordinarily, this would mean that the district court's judgment would be entered—and the time for appeal would begin to run—150 days from the dismissal order. Fed. R. Civ. P. 58(c)(2)(B); Fed. R. App. P. 4(a)(1)(B)(i), (a)(7)(A)(ii). Thus, plaintiff's notice of appeal might be considered premature, but this concern "is specifically addressed, and cured, by Federal Rule of Appellate Procedure 4(a)(7)(B)." *Constien v. United States*, 628 F.3d 1207, 1211 (10th Cir. 2010). Rule 4(a)(7)(B) provides that the lack

*Continued on next page.*

## STATEMENT OF THE ISSUE

Whether Congress has unequivocally waived sovereign immunity for intentional torts committed by TSA employees who screen passengers and baggage at U.S. airports.

## STATEMENT OF THE CASE

## I.    Statutory Framework

### A.    The Federal Tort Claims Act

The FTCA is a limited waiver of sovereign immunity for claims for money damages against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).

Congress has not waived sovereign immunity for all torts, and the FTCA contains a number of limitations.  *See* 28 U.S.C. § 2680.  One

---

of a separate judgment "does not affect the validity of an appeal" from the otherwise final order disposing of the case, and thus the "appellant can always decide to waive the separate document requirement and choose to appeal prior to the running of the 150-day cap."  *Constien*, 628 F.3d at 1211-12 (cleaned up); *accord Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013).

limitation, commonly referred to as the "intentional torts exception," provides that district courts lack jurisdiction over "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id.* § 2680(h). The intentional torts exception, however, contains a limited waiver of sovereign immunity for certain intentional torts committed by certain federal officers. Commonly referred to as the law enforcement proviso, this provision waives sovereign immunity for claims arising "out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" committed by "investigative or law enforcement officers of the United States Government." *Id.* The proviso defines "investigative or law enforcement officer" to be "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

The law enforcement proviso was enacted following a series of "abusive, illegal and unconstitutional 'no-knock' raids" conducted by federal narcotics agents. S. Rep. No. 93-588, at 2 (1973). The families subjected to those raids testified before Congress that plain-clothed officers broke into their homes, pointed guns at them, and caused extensive

4

damage, and there were reports that the same officers had been involved in earlier, mistaken searches that caused substantial injury. Jack Boger, Mark Gitenstein & Paul R. Verkuil, *The Federal Tort Claims Act Intentional Torts Amendment: An Interpretative Analysis*, 54 N.C. L. Rev. 497, 500-01 & n.7, 502-03 (1976). Under the then-existing structure of the FTCA, there was "no remedy against" the United States "if a Federal agent violates someone's constitutional rights—for instance, Fourth Amendment rights against illegal search and seizure." S. Rep. No. 93-588, at 2-3. Congress sought to address that concern and enacted the law enforcement proviso to make the government "liable for the tortious acts of its law enforcement officers when they act in bad faith or without legal justification." *Id.* at 3.

Before enacting the proviso, Congress considered three separate bills that would have amended the broad immunity conferred by the FTCA's intentional tort exception. Two of the bills waived sovereign immunity for torts committed by *all* federal employees. *See* Boger, Gitenstein & Verkuil, *supra*, at 513-15. The bill that became the law enforcement proviso, in contrast, was limited to torts committed by "investigative or law enforcement officers." Pub. L. No. 93-253, § 2, 88 Stat. 50, 50 (1974). The committee report on the bill explained that the law enforcement proviso was "the product of over 2 months of discussion" between Congress and the

Executive Branch, and was designed to "submit the Government to liability" when its officers "injure the public through search and seizures that are conducted without warrants or with warrants issued without probable cause." S. Rep. No. 93-588, at 4.

As explained during congressional hearings, the proviso did not cover federal employees who might conduct administrative searches. As the Acting Assistant Attorney General testified, Department of Agriculture investigators and Department of Defense auditors are authorized to "go into look at books and records." *Federal Tort Claims Amendments: Hearings on H.R. 10439 Before the Subcomm. on Claims & Governmental Relations of the H. Comm. on the Judiciary*, 93d Cong. 18 (1974). These employees may well "get in a dispute" during an inspection with a recalcitrant party, leading to a situation where "some sort of assault occurs" and a person could even "facture his skull." *Id.* In such scenarios, the federal employees were "not law enforcement officers even under this definition. They don't qualify." *Id.*

## B.   The Statutory Authority For TSA

After the terrorist attacks of September 11, 2001, Congress enacted the Aviation and Transportation Security Act, which created TSA and charged it with ensuring transportation security, including civil aviation

6

security.  *See* Pub. L. No. 107-71, 115 Stat. 597 (2001).  TSA must ensure that all passengers and their property are screened prior to boarding commercial aircraft, 49 U.S.C. § 44901(a), in part to ensure that no passenger is "carrying unlawfully a dangerous weapon, explosive, or other destructive substance."  *Id*. § 44902(a)(1); *see also id*. § 44904(a), (e).  To carry out these duties, Congress directed the TSA Administrator to "develop standards for the hiring and retention of security screening personnel," "be responsible for hiring and training personnel to provide security screening," and "train and test security screening personnel." *Id*. § 114(e)(2)-(4).

TSA accomplishes these responsibilities using two different groups.  In the first group are "law enforcement officer[s]" designated by the TSA Administrator.  49 U.S.C. § 114(p)(1).  These law enforcement officers are authorized to carry firearms, to "make an arrest without a warrant for any offense against the United States" based on probable cause, and to "seek and execute warrants for arrest or seizure of evidence" based on probable cause.  *Id*. § 114(p)(2)(A)-(C).  TSA law enforcement officers include Federal Air Marshals and Criminal Investigators, *Vanderklok v. United States*, 142 F. Supp. 3d 356, 361 (E.D. Pa. 2015), who are charged with detecting and apprehending those who would commit criminal or terrorist acts against

7

U.S. airports, airplanes, passengers or crew, and with conducting long-running investigations into violations of federal law connected to air travel, *see* TSA, *TSA Management Directive No. 1100.88-1* at 2 (May 7, 2007), https://perma.cc/W5WH-MRBJ.  The TSA Administrator must consult with the Attorney General to develop guidelines for how TSA law enforcement officers exercise their statutory authority.  49 U.S.C. § 114(p)(3).  And if the TSA Administrator fails to comply with those guidelines, then the statutory authority for TSA law enforcement officers "may be rescinded or suspended."  *Id.* § 114(p)(4).

TSA uses a second group of employees to screen the hundreds of millions of passengers that board flights at U.S. airports every year.  *United States v. Aukai*, 497 F.3d 955, 956 (9th Cir. 2007) (en banc).  These screeners "are not law enforcement officers and do not act as such." *Vanderklok v. United States*, 868 F.3d 189, 208 (3d Cir. 2017).  Instead, TSA screeners serve a circumscribed and vital role by preventing prohibited items from being taken on commercial aircraft.  Thus, TSA screeners examine passengers and baggage for "weapons or explosives," *Aukai*, 497 F.3d at 960, and other items that could pose a danger onboard a flight, such as aerosol insecticides, lithium-ion batteries, bowling pins, canoe paddles,

and automobile airbags.  TSA, *What Can I Bring?*, https://perma.cc/
Q4ME-6KQ3.

TSA screeners are not authorized to carry firearms, make arrests, or
execute warrants for the "seizure of evidence."  *See* 49 U.S.C. § 114(p)(2)
(restricting this authority to law enforcement officers designated by the
TSA administrator).  TSA screeners "are not trained on issues of probable
cause, reasonable suspicion, and other constitutional doctrines that govern
law enforcement officers."  *Vanderklok*, 868 F.3d at 208.  If a screener
discovers illegal contraband—such as illegal drugs—the screener may not
"arrest the person or seize the item, but instead must call a police officer to
do so."  *Hernandez v. United States*, 34 F. Supp. 3d 1168, 1180 (D. Colo.
2014).  That police officer will then independently "determine whether to
take action under State or local laws."  67 Fed. Reg. 8340, 8344 (Feb. 22,
2002).  Aware of TSA screeners' circumscribed authority, Congress directed
there must be at least one law enforcement officer at each security
screening location to assist TSA screeners, 49 U.S.C. § 44901(h)(2), and
airports are required to have an adequate number of local law enforcement
officers on site, *id*. § 44903(c)(1); 49 C.F.R. § 1542.215.

TSA screeners also lack authority to investigate civil violations.  If a
screener discovers an item that is legal to possess but cannot be taken on

the plane (e.g., a baseball bat), the screener "gives the passenger the option of disposing of the item, leaving the item with someone, taking the item back to their vehicle, or abandoning the item." *Leuthauser v. United States*, 2020 WL 4677296 (D. Nev. Aug. 12, 2020).  If the person refuses to cooperate or attempts to bypass the screening, then TSA screeners will call law enforcement for help, as screeners lack authority to physically restrain any person.  *See Ramsingh v. TSA*, 40 F.4th 625, 630 (D.C. Cir. 2022) (describing an attempt to bypass TSA screening procedures); *accord* Dkt. 1 at 1 (complaint's allegations that "TSA screeners lack authority to detain or force an individual to submit to a search").

## II.    Factual Background And Prior Proceedings

**A.**  Plaintiff Elisabeth Koletas was an airline passenger traveling through Southwest Florida International Airport in June 2022.  Dkt. 1 at 1. She alleges that she "had some toilet paper in her underwear to address vaginal bleeding" associated with her pregnancy.  *Id.* at 3.  Koletas requested a pat-down screening, during which a TSA screener felt the outside of plaintiff's groin area and could sense something underneath.  *Id.* Koletas stated that "the material in her underwear was toilet paper," and the TSA screener directed her to secondary screening in a separate room "to

the side of the security area." *Id.* at 4.3  Koletas alleges that during this secondary screening, TSA screeners conducted a second "aggressive" pat down, told Koletas to lift her dress, and pulled down her underwear.  *Id.*4

**B.**  Koletas sued the United States under the FTCA, asserting claims for battery, false imprisonment, intentional infliction of emotional distress, and negligence based on her allegations.  Dkt. 1 at 6-8.  The district court dismissed the complaint for lack of jurisdiction.  Dkt. 24 at 1-6.

The court began by observing that the United States "is generally immune from suits seeking money damages" unless Congress has expressly waived that sovereign immunity.  Dkt. 24 at 1-2.  The FTCA is one such waiver and grants district courts jurisdiction to adjudicate claims that federal employees have committed certain torts.  *Id.* at 2 (citing 28 U.S.C. § 1346).  But the court explained that Congress has not waived immunity

---

3 When a screener encounters an "indistinguishable object," further screening may be necessary to "determine whether the object [is] harmless" and to "ensure that no weapons, flammables, or explosives g[et] on board or near an aircraft."  *See United States v. Herzbrun*, 723 F.2d 773, 774 (11th Cir. 1984).   In 2009, "a terrorist attempted to detonate a nonmetallic explosive device hidden in his underwear while aboard an American aircraft flying over the United States, for which Al Qaeda claimed credit." *Corbett v. TSA*, 767 F.3d 1171, 1180 (11th Cir. 2014).

4 TSA policy "strictly prohibit[s]" inappropriate touching of any passenger. 81 Fed. Reg. 11364, 11374 (March 3, 2016).  "TSA takes all allegations of misconduct seriously" and "has procedures in place to investigate any allegations of such conduct thoroughly."  *Id.*

for all tort claims—rather, Congress preserved sovereign immunity for claims "arising out of" various intentional torts, including "assault, battery, [and] false imprisonment." *Id.* (quoting 28 U.S.C. § 2680(h)). Thus, the court held, "the intentional tort exception would bar [plaintiff's] claims," unless they fell within the law enforcement proviso's waiver of immunity. Dkt. 24 at 2. Accordingly, the relevant jurisdictional question was whether TSA screeners met the statutory definition of an "investigative or law enforcement officer." *Id.* at 3 (quoting 28 U.S.C. § 2680(h)).

Consistent with this Court's conclusion in *Corbett v. TSA*, 568 F. App'x 690, 701 (11th Cir. 2014) (per curiam), the district court held that TSA screeners do not fall within the law enforcement proviso. Dkt. 24 at 3. The court observed that TSA can designate officers—like Air Marshals—to "serve as a law enforcement officer" to make arrests, and seek and execute warrants. *Id.* at 4. "But TSA has not designated its screeners to serve as law enforcement officers," and the court held that they accordingly "remain only employees," *id.*, not "officer[s] of the United States who [are] empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law," 28 U.S.C. § 2680(h).

The court explained that this distinction "harmonizes well" with the statutory text, which "describe[s] officers with traditional law enforcement

duties." Dkt. 24 at 5. The court reinforced that conclusion by pointing to the limited subset of torts that Congress included within the proviso: "'assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution'—claims that often result from law enforcement activity." *Id.* Because "TSA screeners do not have traditional law enforcement duties" and "are not officers under the FTCA's law enforcement proviso," the court held, Congress had not waived "sovereign immunity with respect to Plaintiff's claims and the Court must dismiss this action." *Id.*

## III.  Standard of Review

The Court reviews de novo a dismissal of a complaint for sovereign immunity. *Smith v. United States*, 14 F.4th 1228, 1230 (11th Cir. 2021).

### SUMMARY OF ARGUMENT

The FTCA generally does not waive sovereign immunity for claims based on intentional torts. Congress has provided a limited exception to that rule, known as the law enforcement proviso. 28 U.S.C. § 2680(h). The proviso is a limited waiver of sovereign immunity for certain intentional tort claims like assault and battery committed by "investigative or law enforcement officers" of the United States. *Id.* The proviso, in turn, defines

those officers as those "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

Consistent with this Court's decision on the same issue, *Corbett v. TSA*, 568 F. App'x 690, 701 (11th Cir. 2014) (per curiam), the district court correctly held that the proviso extends does not include employees like TSA screeners who lack authority to make arrests, seize evidence, or execute searches. The proviso is best construed based on its text, context, and understood meaning as applying to officers with traditional law enforcement police powers. It does not apply to federal personnel who have authority only to conduct administrative searches, *EEOC v. First National Bank of Jackson*, 614 F.2d 1004 (5th Cir. 1980) (EEOC investigators), or others who might superficially resemble law enforcement, *Solomon v. United States*, 559 F.2d 309, 310 (5th Cir. 1977) (per curiam) (Air Force security guards). Likewise, the statute does not apply to TSA screeners who conduct airport screening but lack traditional law enforcement authority. And there is no factual dispute that the TSA screeners here were not authorized to exercise any law enforcement powers that other TSA law enforcement officials—like Air Marshals—may possess. *Cf.* 49 U.S.C. § 114(p).

14

To the extent that there is any ambiguity in the statute, that ambiguity must be resolved in favor of the United States. *FAA v. Cooper*, 566 U.S. 284, 290-91 (2012). Here, the conclusion that the law enforcement proviso does not encompass TSA screeners is at least "a plausible interpretation of the statute." *Id.* Accordingly, Congress has not unambiguously waived the United States' sovereign immunity, and the district court lacked jurisdiction.

## ARGUMENT

### Congress Has Not Waived Sovereign Immunity For Intentional Torts Committed By TSA Screeners

The district court correctly held that it lacked jurisdiction over Koletas's FTCA claims. As the court explained, TSA screeners do not fall within the statutory definition of an "investigative or law enforcement officer," 28 U.S.C. § 2680(h), because they "do not have traditional law enforcement duties" and "are not officers under the FTCA's law enforcement proviso." Dkt. 24 at 5. That conclusion is entirely consistent with this Court's decision in *Corbett v. TSA*, 568 F. App'x 690 (11th Cir. 2014) (per curiam), which explained that this "limited waiver of sovereign immunity," *id.* at 699, does not apply to TSA screeners and "sovereign immunity bars [the plaintiff's] intentional tort claims against the United States," *id.* at 701-02.

While this Court correctly resolved this question in *Corbett*, other courts of appeals have reached conflicting decisions.  A panel of the Third Circuit found *Corbett* "persuasive," and held that the proviso "does not cover TSA screeners," *Pellegrino v. TSA*, 896 F.3d 207, 225 & n.24 (3d Cir. 2018), but a majority of the divided en banc court later overturned that holding, *Pellegrino v. TSA*, 937 F.3d 164 (3d Cir. 2019).  Judges Krause, Jordan, Hardiman, and Scirica dissented and explained why TSA screeners are not law enforcement officers under § 2680(h).  *Id.* at 181-200.  A divided panel of the Eighth Circuit agreed with the en banc *Pellegrino* majority, *Iverson v. United States*, 973 F.3d 843 (8th Cir. 2020), while Judge Gruender dissented and would have held that the law enforcement proviso does not extend to TSA screeners, *id.* at 855-68.  More recently, the Fourth and Ninth Circuit have concluded that TSA screeners fall within the proviso.  *Osmon v. United States*, 66 F.4th 144 (4th Cir. 2023); *Leuthauser v. United States*, 71 F.4th 1189 (9th Cir. 2023).

The court of appeals holding that TSA screeners fall within the proviso have all based their holding on the conclusion that the authority to "execute searches," 28 U.S.C. § 2680(h), necessarily encompasses the authority to conduct an administrative search outside of the criminal enforcement context.  By contrast, this Court and other judges have held

16

that federal employees—who lack the authority to make arrests, seize evidence, or "execute searches" in a criminal context—are not "investigative or law enforcement officers."

The second reading is the better one, but both readings are—at a minimum—plausible, and "the statute is reasonably susceptible to divergent interpretation," *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). That is dispositive here. As this Court has explained, the "FTCA is a specific waiver of the sovereign immunity of the United States and must be strictly construed;" its limits "must be scrupulously observed, and not expanded, by the courts." *Dotson v. United States*, 30 F.4th 1259, 1264 (11th Cir. 2022). The Supreme Court has thus held that "[a]ny ambiguities * * * are to be construed in favor of immunity," and "[a]mbiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *FAA v. Cooper*, 566 U.S. 284, 290-91 (2012).

Here, Congress has preserved the United States' immunity from suit for any intentional torts committed by its employees. 28 U.S.C. § 2680(h). The law enforcement proviso is a narrow exception to that rule, waiving sovereign immunity only for certain intentional torts committed by investigative or law enforcement officers who are authorized to "execute

17

searches, to seize evidence, or to make arrests for violations of Federal law."
*Id.* The proviso thus "must be strictly interpreted" because "it is a
relinquishment of a sovereign immunity," *United States v. Sherwood*, 312
U.S. 584, 590 (1941) (collecting cases). And under that standard, Congress
has not "unequivocally" authorized suits for intentional torts committed by
TSA screeners. *Cooper*, 566 U.S. at 290.

### A. The FTCA's Intentional Tort Exception Waives Immunity For "Investigative Or Law Enforcement Officers" Who Possess Traditional Police Powers

"It is well settled that sovereign immunity bars suit against the United
States except to the extent that it consents to be sued and that statutory
waivers of sovereign immunity are to be construed strictly in favor of the
sovereign." *Dotson*, 30 F.4th at 1264 (quotation marks omitted).
Accordingly, waivers of sovereign immunity "must be unequivocally
expressed" and any ambiguity in the statute must "be construed in favor of
immunity." *Savage Services Corp. v. United States*, 25 F.4th 925, 933 (11th
Cir. 2022).

The FTCA "is a specific, congressional exception to the United States'
sovereign immunity for tort claims." *Turner ex rel. Turner v. United
States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (quotation marks omitted).
And consistent with the general rule surrounding waivers of sovereign

immunity, the "FTCA's waiver" of immunity "'must be scrupulously observed.'" *Dotson*, 30 F.4th at 1264. *Accord Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015) (holding that the Court "must [] strictly construe[]" the FTCA's waiver of immunity "in favor of the United States").

As applicable here, Congress has retained the United States' immunity for claims arising out of certain intentional torts committed by federal employees:  "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h).  Congress thus has not generally waived sovereign immunity for Koletas's claims, which "aris[e] out of" battery and false imprisonment.  *Id.*

Instead, Koletas's claim for district court jurisdiction is based on a separate waiver of sovereign immunity within § 2680(h)—the law enforcement proviso.  The proviso waives the United States' immunity for claims arising out of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" committed by federal "investigative or law enforcement officers."  28 U.S.C. § 2680(h).  The statute further defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  *Id.*  The

19

statute's terms thus accord with the common-sense understanding of what Congress sought to achieve with the law enforcement proviso: to provide a remedy for people injured by federal law enforcement.  S. Rep. No. 93-588, at 3 (1974) (explaining that the law enforcement proviso waives immunity "if a federal narcotics agent intentionally assaults" a person "in the course of an illegal 'no-knock' raid" on their home).

A careful reading of the text, *infra* pp. 23-32, confirms that the law enforcement proviso applies to the usual connotations of law enforcement officers.  So too does decades of precedent outside of the TSA context, in which the courts of appeals have consistently held that the proviso applies to traditional law enforcement officers.  Thus, the proviso covers Border Patrol officers,[5] Veterans Affairs police officers,[6] Immigration and Naturalization Service agents,[7] postal inspectors who have the arrest power,[8] and Bureau of Prisons officers.[9]

But this Court's decisions have declined to extend the proviso's waiver of immunity to federal employees who lack traditional law enforcement functions.  Thus, in *Corbett*, this Court explained that TSA screeners are

---

[5] *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000).

[6] *Celestine v. United States*, 841 F.2d 851, 853 (8th Cir. 1988) (per curiam).

[7] *Caban v. United States*, 671 F.2d 1230, 1234 n.4 (2d Cir. 1982).

[8] *Moore v. United States*, 213 F.3d 705, 708 (D.C. Cir. 2000).

[9] *Hernandez v. Lattimore*, 612 F.2d 61, 64 n.7 (2d Cir. 1979).

not authorized to perform "various law enforcement functions," do not act as "law enforcement officers," and do not fall under the law enforcement proviso, even though they perform "pre-boarding administrative searches for certain prohibited items." 568 F. App'x at 700-01. Likewise, this Court's predecessor held that the authority to conduct an administrative search does not fall within the law enforcement proviso. *EEOC v. First National Bank of Jackson*, 614 F.2d 1004 (5th Cir. 1980).[10] Agents of the Equal Employment Opportunity Commission (EEOC) may "at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated" for violations of Title VII. *Id.* at 1007-08. The Fifth Circuit explained that EEOC agents were "not, however, given authority to execute searches, seize evidence, or make arrests for violation of federal law," and held that the limited authority to conduct administrative searches did not fall within "the plain meaning" of the statute. *Id.* at 1008. For similar reasons, the Fifth Circuit held that security guards employed by the Air Force do not fall within the proviso because—although they are charged with the security and protection of Air Force property—they are not "empowered by law to

---

[10] Fifth Circuit decisions before October 1, 1981, constitute binding precedent in this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

execute searches, to seize evidence, or to make arrests for violations of federal law." *Solomon v. United States*, 559 F.2d 309, 310 (5th Cir. 1977) (per curiam).

Consistent with these holdings, the Second Circuit likewise affirmed the dismissal of an FTCA suit against a federal parole officer. *Wilson v. United States*, 959 F.2d 12, 13 (2d Cir. 1992). The officer lacked authority to make arrests, *id.* at 15, but could conduct "supervisory visit[s]" to a parolee's residence and could seize "contraband in plain view * * * only with the parolee's consent," *id.* (citing 28 C.F.R. § 2.40(a)(12) (1992)). The Second Circuit held that this limited authority was not within the "power contemplated by section 2680(h)" and the officers "cannot be considered law enforcement personnel." *Id.*

Those limitations make good sense. There are a number of federal employees—like parole officers and EEOC inspectors—who are authorized to conduct administrative searches totally separate from any criminal investigations. Thus, Congress has authorized inspectors of the Occupational Safety and Health Administrations to "inspect and investigate * * * any [covered] place of employment." 29 U.S.C. § 657(a)(2). EPA and FDA employees may likewise "enter" and "inspect" covered areas. 21 U.S.C. § 374(a)(1); 42 U.S.C. § 6927(a). To our knowledge, there is no precedent

for holding that such inspectors qualify as "investigative or law enforcement officers" under the proviso, even though they may perform certain administrative searches.  That is unsurprising and consistent with the best reading of the statutory text.

**1.**  Congress limited the proviso to "investigative or law enforcement officers," rather than "employee[s]," a term used in other subsections of 28 U.S.C. § 2680.  In subsection (a) and (e), Congress addressed sovereign immunity for certain claims arising out of the "act or omission of an employee of the Government."  28 U.S.C. § 2680(a), (e).  But Congress deliberately chose not to use such broad language in subsection (h) for the law enforcement proviso.  When Congress uses certain language in one statutory provision but not another, that choice should be given significance.  *See Loughrin v. United States*, 573 U.S. 351, 358 (2014).  Thus, as this Court explained in *Corbett*, TSA can choose to designate employees as "law enforcement officers" and endow them with traditional law enforcement functions like the authority to make arrests, seize evidence, and execute searches.  *Corbett*, 568 F. App'x at 701.  While TSA designates other officials as "law enforcement officers" to perform traditional law enforcement functions, *id.*; *supra* pp. 7-8, TSA deliberately withholds such authority from screeners.  And "[m]erely being a TSA

23

employee does not make one an 'officer of the United States Government'"

for purposes of § 2680(h). *Corbett*, 568 F. App'x at 701; *see also Savage*

*Services Corp.*, 25 F.4th at 934-35 (emphasizing that courts should "avoid a

reading that renders some words altogether redundant" or "insignificant"

when construing waivers of sovereign immunity).

Furthermore, Congress' use of the term "investigative or law

enforcement officer" "naturally evokes criminal law enforcement."

*Pellegrino*, 937 F.3d at 188 (Krause, J., dissenting). Congress used that

same phrase elsewhere in the U.S. Code to describe officers authorized by

law to perform traditional criminal law enforcement functions. Thus, the

Wiretap Act describes "[i]nvestigative or law enforcement officer" as an

officer "who is empowered by law to conduct investigations of or to make

arrests for offenses * * * and any attorney authorized by law to prosecute or

participate in the prosecution of such offenses." 18 U.S.C. § 2510(7).

Similarly, the Foreign Intelligence Surveillance Act prohibits electronic

surveillance under color of law but provides a defense to "a law

enforcement or investigative officer" who is "engaged in the course of his

official duties and the electronic surveillance was authorized by and

conducted pursuant to a search warrant or court order." 50 U.S.C.

§ 1809(b).

24

Those statutes were enacted shortly before and after the law enforcement proviso, and both demonstrate that Congress understood and intended the phrase "law enforcement or investigative officer" to cover officers who "conduct investigations relevant to criminal law enforcement." *Iverson*, 973 F.3d at 862 (Gruender, J., dissenting). And it makes sense that Congress would seek to waive sovereign immunity for the actions of such law enforcement officers but not other federal employees. Officers who perform "traditional law enforcement functions" are "expected to school themselves in the niceties of the Fourth Amendment's doctrinal restrictions," and ought to be better able to avoid wrongdoing. *Id.* at 858, 862 (cleaned up).

**2.** Even viewed without reference to other statutes, the words Congress used in § 2680(h) demonstrate that the proviso applies to criminal law enforcement officers. Congress defined "investigative or law enforcement officer" to mean an officer "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The powers to seize evidence or to make arrests for violations of Federal law "necessarily carr[y] criminal connotations" and refer to the "police powers." *See Pellegrino*, 937 F.3d at 187 & n.7 (Krause, J., dissenting) (collecting cases). And under normal principles of statutory

25

construction, the power to "execute searches" covers the same ground because "words grouped in a list should be given related meanings." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012) (*Reading Law*).  Applying that canon here "limit[s] a general term to a subset of all the things or actions that it covers" according to "its ordinary meaning."  *Id.* at 196.  Thus, by placing the power to "execute searches" in a list with traditional police powers to "seize evidence" and "make arrests," the statute's context informs the meaning of "execute searches."

Applying that canon of construction, this Court has held that district courts have jurisdiction over suits seeking to recover overpayments on taxes, but they lack jurisdiction for suits seeking interest on those overpayments.  *Paresky v. United States*, 995 F.3d 1281, 1287-88 (11th Cir. 2021).  The Court explained that the jurisdictional statute, 28 U.S.C. § 1346(a)(1), applied to suits seeking "any sum alleged to have been excessive" under the tax laws, which—read in isolation—might cover interest on overpayments.  *Id.* at 1287.  But "[w]hen read in the context of" the statute "as a whole," suits seeking a "sum" should be construed alongside the statute's references to suits seeking recoupment of a "tax" or a "penalty."  *Id.* at 1287-88.  Those suits would be limited to "amounts

26

previously paid by the taxpayer to the government," and so suits for a "sum" should likewise be so limited to amounts already paid. *Id.* at 1288. Because the government never collected interest on prior overpayments, the district courts lacked jurisdiction over the plaintiffs' suit. *Id.* at 1289. Just as "tax" and "penalty" provide limitations on what can be recovered as a "sum," so too does the authority to "seize evidence" and "make arrests" limit the meaning of the term "execute searches."

The Supreme Court has applied this principle in construing other portions of 28 U.S.C. § 2680. In *Dolan v. United States Postal Service*, 546 U.S. 481 (2006), the Supreme Court interpreted the FTCA's retention of sovereign immunity for claims "arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). The plaintiff in *Dolan* sued the United States under the FTCA after the Postal Service negligently left mail on her porch that caused her to trip and fall. *Dolan*, 546 U.S. at 483. The Court explained that "[i]f considered in isolation, the phrase 'negligent transmission' could embrace a wide range of negligent acts * * * including creation of slip-and-fall hazards from leaving packets and parcels on the porch of a residence." *Id.* at 486. But the Court explained that the statute should not be read so expansively because "context and precedent require a narrower reading, so that 'negligent

transmission' does not go beyond negligence causing mail to be lost or to arrive late, in damaged condition, or at the wrong address." *Id.* That is because § 2680(b) used the term "negligent transmission" in conjunction with "two other terms, 'loss' and 'miscarriage,'" which "limit the reach of 'transmission.'" *Id.* Because "loss" and "miscarriage" "refer to failings in the postal obligation to deliver mail" on time to the right place, the Court would not read "negligent transmission" to "swe[ep] far more broadly." *Id.* at 487. And here, "execute searches" is limited by the accompanying terms "seize evidence" and "make arrests," referring to traditional police powers.

That conclusion is reinforced by the fact that all these powers are followed by the modifier "for violations of Federal law." 28 U.S.C. § 2680(h). That modifying phrase "follows a 'straightforward, parallel construction that involves all nouns or verbs in a series' to modify each of the terms in the series." *United States v. Miles*, 75 F.4th 1213, 1222 (11th Cir. 2023) (quoting *Reading Law* 147). Thus, a statute that prohibits "manufacturing, distributing, or possessing with intent to manufacture or distribute, *a controlled substance*," *Miles*, 75 F.4th at 1218 (emphasis added), prohibits possession of controlled substances with intent to manufacture, but does not apply to possession of *other* substances, *id.* at 1222. So too here, the law enforcement proviso applies to officers

28

empowered to take action "for violations of Federal law."  28 U.S.C.
§ 2680(h).

Only criminal violations would support an officer's authority to make
an arrest—and accordingly the phrase "for violations of Federal law" refers
to criminal violations.  *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) (a
phrase that "applies without differentiation to all three categories" retains
the same meaning when modifying each category).  The law enforcement
proviso is thus directed at officers with authority to enforce criminal laws
through seizures, searches, and arrests.

Moreover, the specific intentional torts that are covered by the law
enforcement proviso—assault, battery, false imprisonment, false arrest,
abuse of process, and malicious prosecution— are "the types of tort claims
typically asserted against" officers with traditional police powers.
*Pellegrino*, 937 F.3d at 188 (Krause, J., dissenting).  The proviso preserves
the United States' immunity for other tort claims like libel, slander,
misrepresentation, deceit, and interference with contract rights, which are
not unique to law enforcement.  28 U.S.C. § 2680(h).

**3.**  Even if the authority to "execute searches" were viewed in
isolation, it still connotes the traditional police power to execute a warrant
or other type of criminal search, such as a search incident to arrest.  Indeed,

courts have routinely referred to the execution of searches in such circumstances. *See, e.g.*, *United States v. Ramirez*, 523 U.S. 65, 69 (1998) ("[A]pproximately 45 officers gathered to execute the [search] warrant."); *Los Angeles County v. Rettele*, 550 U.S. 609, 614 (2007) ("In executing a search warrant officers may take reasonable action to secure the premises."). And "every other statute in the United States Code that uses this phrase refers to investigatory searches" and so too does "every Supreme Court and circuit case that had been published before the proviso was enacted." *Pellegrino*, 937 F.3d at 185 (Krause, J., dissenting) (collecting statutes and cases).

In contrast, Congress has described non-criminal, administrative searches differently. Unlike a criminal, investigatory search, an administrative search requires neither individualized suspicion nor a warrant because "the primary purpose of the search[] is [d]istinguishable from the general interest in crime control" and is "other than conducting criminal investigations." *City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015) (quotation marks omitted). Administrative searches "are ubiquitous and include regulatory searches, administrative subpoenas, inventory searches, workplace drug testing, and border checkpoints—just to name a few." *Pellegrino*, 937 F.3d at 184 (Krause, J., dissenting) (citations

30

omitted).  Thus, Congress generally refers to such authority as inspections or screenings.  *Id.* at 185.

All this is to say that when "Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached" to that term.  *Cooper*, 566 U.S. at 292 (quotation marks omitted).  Thus, when "Congress chose to use the term 'execute searches,'" it meant for that phrase to mean investigative searches for violations of criminal law, as the term had been "repeatedly and consistently [understood] to the same effect."  *Iverson*, 973 F.3d at 862 (Gruender, J., dissenting).  That is why when Congress debated the proviso, there was no serious question that it did not cover federal employees who might conduct administrative searches.  *Federal Tort Claims Amendments: Hearings on H.R. 10439 Before the Subcomm. on Claims & Governmental Relations of the H. Comm. on the Judiciary*, 93d Cong. 18 (1974) (testimony of Irving Jaffe, Acting Assistant Attorney General) ("We have Department of Agriculture investigators who go into look at books and records. We have Defense Department auditors to look at books and records * * *  They are not law enforcement officers even under this definition.  They don't qualify.").  *Accord* 120 Cong. Rec. 5287 (1974) (statements of Reps. Donohue and Wiggins) (the proviso "only applies to law enforcement officers.  It does not

apply to any other Federal employees that might violate the rights of an individual").

By contrast, the proviso applies to officers who lack authority to make arrests but *can* execute a criminal, investigative search. *See Bunch v. United States*, 880 F.3d 938 (7th Cir. 2018). *Bunch* considered whether a "forensic chemist with the federal Bureau of Alcohol, Tobacco, and Firearms (ATF)" fell within the law enforcement proviso. *Id.* at 939. In remanding for further factual development, the Seventh Circuit explained that while the ATF chemist lacked arrest authority, he may have had authority "to execute searches or to seize evidence." *Id.* at 943. By statute and regulation, ATF officers had authority to "inspect the site of any accident, or fire, in which there is reason to believe that explosive materials were involved." *Id.* (citing 18 U.S.C. § 846; 27 C.F.R. §§ 55.11, 55.31 (1995)). Thus, the relevant question was whether the chemist was an ATF officer who had authority to search for "relevant evidence" during "crime-scene investigations," or whether the chemist was like the "many employees of ATF" who lacked such investigatory search and seizure authority and would fall outside of § 2680(h). *Id.* at 945-46.

As explained below, TSA screeners lack any comparable authority.

32

### B.     TSA Screeners Are Not "Investigative Or Law Enforcement Officers" Under 28 U.S.C. § 2680(h)

**1.**  TSA screeners lack the legal authority to make arrests, seize evidence, or execute searches for violations of federal law.  Congress directed the TSA Administrator to "provide for the screening of all passengers and property,"49 U.S.C. § 44901(a), and the Administrator does so by hiring and training "security screening personnel," *id*. § 114(e).

Congress recognized that in executing those functions, some law enforcement authority will be necessary.  Congress provided that authority by allowing the TSA Administrator to designate a federal employee "to serve as a law enforcement officer."  49 U.S.C. § 114(p)(1).  Those TSA law enforcement officers—like Federal Air Marshals and TSA criminal investigators, *supra* pp. 7-8—are granted statutory authority to "carry a firearm"; "make an arrest" for federal criminal offenses; and "seek and execute warrants for arrest or seizure of evidence * * * upon probable cause that a violation has been committed."  49 U.S.C. § 114(p)(2).  These are the types of "investigative or law enforcement officer" that Congress intended to come within the scope of the proviso.

By contrast, TSA security screeners are not authorized to carry weapons, seize evidence, make arrests, or execute  criminal investigative searches.  *Corbett*, 568 F. App'x at 701 (citing 49 U.S.C. § 114(p)(2)).  If a

screener encounters illegal contraband, they may not seize that item—instead, they must summon law enforcement to assist.  *Hernandez v. United States*, 34 F. Supp. 3d 1168, 1180 (D. Colo. 2014).  Nor may they seize items that are legal but prohibited (such as knives).  If a screener discovers a prohibited item, the screener "gives the passenger the option of disposing of the item, leaving the item with someone" else, "taking the item back to their vehicle, or abandoning" it.  *Welch v. Huntleigh USA Corp.*, 2005 WL 1864296, at *5 (D. Ore. Aug. 4, 2005).  If the traveler refuses to comply, the screener will then alert law enforcement, who independently "determine whether to take action under State or local laws."  67 Fed. Reg. 8340, 8344-45 (Feb. 22, 2002).

When TSA screeners examine passengers and baggage, they are not executing searches for violations of federal law.  Instead, they are carrying out "an administrative purpose, namely, to prevent the carrying of weapons or explosives aboard aircraft," *United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007) (en banc).  As the Supreme Court has recognized, the federal government can carry out that screening to "prevent[] hijacking or like damage" without individualized suspicion or "a demonstration of danger as to any particular airport or airline."  *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 675 n.3 (1989).  That is

different in kind from the searches covered by the law enforcement proviso—indeed, TSA searches would violate the Fourth Amendment if their primary purpose was a "general interest in crime control." *City of Indianapolis v. Edmond*, 531 U.S. 32, 48 (2000).  Accordingly, "it would be unreasonable to interpret 'to execute searches' to include the TSA screener's performance of narrowly focused, consensual searches that are administrative in nature, when considered in light of the other traditional law enforcement functions (i.e., seizure of evidence and arrest) that Congress chose" to include in law enforcement proviso.  *Corbett*, 568 F. App'x at 700; *accord Pellegrino*, 937 F.3d at 182-89 (Krause, J., dissenting) (making the same point); *Iverson*, 973 F.3d at 863-65 (Gruender, J., dissenting) (same).  And that is why this Court's predecessor and others have consistently held that traditional law enforcement officers fall within the proviso, while federal employees with more limited administrative search authority do not.  *First National Bank of Jackson*, 614 F.2d at 1007-08 (EEOC inspectors); *Solomon*, 559 F.2d at 309-10 (Air Force security guards); *Wilson*, 959 F.2d at 15 (parole officer).

**2.**  Koletas urges this Court to depart from its previous decisions and instead adopt the holdings of other courts that have construed the law enforcement proviso to encompass TSA screeners.  Those courts, however,

have erred in their analysis. They have construed the statutory terms in isolation, holding that "execute searches" could be understood broadly to encompass TSA screenings. *Osmon*, 66 F.4th at 148. They have then further held that all of the textual indications that "execute searches" may have a more limited meaning given the "law enforcement" context and the comparable criminal authority to "make arrests" and "seize evidence" should not be read to do so. *Pellegrino*, 937 F.3d at 170-77. And in doing so, the courts have relegated the role of sovereign immunity to a back-end consideration after having already reached their conclusion. *Leuthauser*, 71 F.4th at 1199 n.4; *Osmon*, 66 F.4th at 150.

That mode of analysis is flawed. *See Buchanan v. Barr*, 71 F.4th 1003, 1013 n.1 (D.C. Cir. 2023) (Walker, J., concurring) (describing *Pellegrino* as "articulating a convoluted test" and noting the many other opinions confirming that the law enforcement "exception is narrow").

Courts "do not read statutes in little bites," *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 643 (2006), but instead "must consider the particular context in which the term appears," *Cooper*, 566 U.S. at 294. As this Court has explained, a statute's meaning "does not turn solely on dictionary definitions of its component words in isolation," but rather can be made plain or ambiguous within "the specific context in which that language is

used, and the broader context of the statute as a whole." *United States v. Dawson*, 64 F.4th 1227, 1237 (11th Cir. 2023) (cleaned up).

The statute speaks of "investigative or law enforcement officers," who have authority to "make arrests" and "seize evidence" for "violations of Federal law," and then only waives immunity for the kinds of torts—*e.g.*, assault, battery, and false imprisonment—that those officers might commit in the scope of their employment.  And the statute's use of the term "execute searches" is entirely consistent with that understanding, giving the term "execute" a specific meaning consistent with the law-enforcement understanding of the proviso.  The statute is thus reasonably read to encompass waive immunity for "officers with traditional police powers." *Pellegrino*, 937 F.3d at 200 (Krause, J., dissenting).

That reasonable construction does not waive immunity for employees like TSA screeners who perform non-investigative, non-law-enforcement functions in security screening.[11]  A contrary construction runs into

---

[11] If TSA screeners—like other federal employees—allegedly commit an intentional tort wholly outside of their duties, then sovereign immunity would not be a bar to suit.  A plaintiff could sue the employee in their personal capacity under state tort law, and the United States would not be substituted as a defendant because the employee would not have been acting within the scope of their employment.  *See generally Omnipol, A.S. v. Multinational Defense Services, LLC*, 32 F.4th 1298, 1305 (11th Cir. 2022) (describing these procedures under 28 U.S.C. § 2679).

anomalies.  It ignores that TSA regularly assigns screening duties to private contractors, but reserves law enforcement functions for its employees.  *See* 49 U.S.C. § 44920(a).  It makes good sense that Congress would limit law enforcement authority only to those federal employees specifically designated by the TSA Administrator to act as law enforcement officers.  *Id.* § 114(p).  And those are the kinds of individuals—not screeners or contractors—who perform the functions contemplated by § 2680(h).

Construing the statute to include TSA screeners provides no textual basis for distinguishing the many other federal employees who perform only administrative searches, such as inspectors for OSHA, FDA, and EPA, 29 U.S.C. § 657(a)(2); 21 U.S.C. § 374(a)(1); 42 U.S.C. § 6927(a), or federal security guards who lack traditional police powers, *Solomon*, 559 F.2d at 309-10.  Indeed, Koletas identifies no basis for distinguishing these officials other than to say that their duties are different—without an explanation of what the difference is or why it matters.  Br. 24.  Interpreting § 2680(h) to cover all administrative searches "would be a dramatic expansion of the Federal Tort Claims Act's waiver of sovereign immunity," *Smith v. United States*, 14 F.4th 1228, 1234 (11th Cir. 2021), and inappropriate given that "Congress's waiver was selective," *id.* at 1232, and "must be strictly

construed in favor of the United States," *id.* at 1231 (quotation marks omitted).

The Third Circuit majority in *Pellegrino* attempted to distinguish TSA screenings from general administrative searches, emphasizing that airport security screenings "often involve invasive examinations of the physical person." *Pellegrino*, 937 F.3d at 176. But that purported distinction is an "atextual line" that improperly "attempt[s] to cabin the proviso's reach." *Id.* at 195 (Krause, J., dissenting). Congress could well determine that officers who perform administrative searches involving physical touch should fall within the proviso, and Congress is free to amend the statute to say so—just as it previously amended the statute to enact the law enforcement proviso. But as this Court has explained, policy arguments like this are inapplicable to the statutory analysis about whether Congress unequivocally waived sovereign immunity and provided that plaintiffs should be compensated from taxpayer funds. "[I]t simply isn't our place to second-guess the legislature's fairness determinations or to supplant its considered judgment with our own." *Savage Servs. Corp.*, 25 F.4th at 945; *id.* at 938 (holding that the applicable statutory schemes did not waive sovereign immunity for the plaintiffs' claims).

**3.**  If there were any doubt on the correct construction of the statute, "[a]ny ambiguities in the statutory language are to be construed in favor of immunity."  *Cooper*, 566 U.S. at 290.  "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government."  *Id.* at 290-91.

Some courts have mistakenly suggested that this rule of construction does not apply *at all* to the FTCA, citing the Supreme Court's decision in *Dolan*.  *See Osmon*, 66 F.4th at 150.  That is incorrect and contrary to this Court's decisions.  *See Dotson*, 30 F.4th at 1264 (holding that the FTCA "must be strictly construed"); *Zelaya*, 781 F.3d at 1322 (same).

The other courts of appeals' error has come from a misreading of *Dolan*, which construed part of the FTCA that clawed back sovereign immunity for certain activities of the Post Office.  *Dolan*, 546 U.S. at 483 (citing 28 U.S.C. § 2680(b)).  *Dolan* explained that because the FTCA waives the sovereign immunity "in sweeping language," it was not necessary to strictly construe provisions where Congress *reclaimed* sovereign immunity.  *Id.* at 491-92.

Here, in contrast, the law enforcement proviso does not reclaim sovereign immunity.  That was already done when Congress passed the intentional torts exception.  The intentional torts exception in § 2680(h)

generally bars Koletas's tort claims—the only exception for them is the limited waiver of sovereign immunity in the law enforcement proviso. And that waiver of immunity must be "construed strictly in favor of the sovereign." *Dotson*, 30 F.4th at 1264.

As demonstrated above, the law enforcement proviso is best construed—and at least reasonably construed—to cover traditional law enforcement functions, not administrative searches. As the Supreme Court has explained, because that reasonable construction is possible, it must be adopted. *Cooper*, 566 U.S. at 299. In *Cooper*, the Court construed a statue providing that the United States would be liable for "actual damages" and had to determine whether that encompassed claims for mental or emotional distress. *Id*. at 287. Although the Court thought the better reading of "actual damages" was limited to economic loss, the Court did "not claim that the contrary reading of the statute * * * is inconceivable." *Id*. at 299. Rather, because the Court was construing a waiver of sovereign immunity, the only "question we must answer is whether it is *plausible* to read the statute, as the Government does." *Id*. (emphasis added). The Supreme Court thus adopted the government's limiting construction because a contrary holding "would expand the scope of Congress' sovereign immunity waiver beyond what the statutory text clearly requires." *Id*.

And this Court has not hesitated to disagree when other courts of appeals have erred in construing the FTCA to improperly broaden Congress's waiver of sovereign immunity. *Shivers v. United States*, 1 F.4th 924 (11th Cir. 2021). Under the FTCA, Congress chose to retain sovereign immunity for torts based upon a federal employee's "discretionary function or duty * * * whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In *Shivers*, the plaintiff was a federal prisoner attacked and injured by his cellmate; the plaintiff sued the United States arguing that the decision to pair him with that cellmate violated the Eighth Amendment and could not be considered a "discretionary function" because it allegedly violated the Constitution. *Shivers*, 1 F.4th at 927, 929. This Court acknowledged that the plaintiff's argument had generally been adopted by the D.C. Circuit, the First Circuit, the Eighth Circuit, and the Ninth Circuit. *Id.* at 933 n.5. Even so, the Court declined to adopt those holdings, explaining that the contrary view was better supported by "reasoning and analysis" and ultimately "more persuasive." *Id.* Accordingly, the Court held that Congress had not waived sovereign immunity for the plaintiff's claims. *Id.* at 930-35 (explicating the Court's reasoning); *see also Paresky*, 995 F.3d at 1288-89 (declining to follow the Sixth Circuit's decision expanding district court jurisdiction for certain suits against the United

States); *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1304 (11th Cir. 2019) (declining to follow decisions that "overlook the sovereign-immunity problem entirely").

That logic is all the more applicable here, where there is no dispute that intentional tort claims against the United States are generally barred by § 2680(h)—the only question is whether plaintiff's claims fall within the limited waiver of the law enforcement proviso. And when the district court's jurisdiction rests on such a waiver of sovereign immunity, "the terms of the government's consent to be sued" must be "strictly construed, in terms of [their] scope, in favor of the sovereign." *Stone v. Commissioner of Internal Revenue*, 86 F.4th 1320, 1327 (11th Cir. 2023) (cleaned up).

### C.    28 U.S.C. § 2680(h) Bars All Of Koletas's Claims

As this Court has explained, the intentional torts exception in 28 U.S.C. § 2680(h) "bars claims arising out of a certain type of factual situation," *i.e.*, the factual allegations that give rise to the asserted intentional torts. *Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986); *accord Zelaya*, 781 F.3d at 1333 ("The phrase 'arising out of' is interpreted broadly to include all injuries that are dependent upon one of the listed torts" in § 2680(h) "having been committed").

43

Thus, § 2680(h) bars claims for other torts—such as intentional infliction of emotional distress—when those torts are premised on the same "government[] actions that constitute a claim for" false arrest, which is "expressly exempted from the coverage of the FTCA." *Metz*, 788 F.2d at 1534-35. Here, Koletas's claims for negligence and intentional infliction of emotional distress are premised on the same alleged conduct that gives rise to her claims for false imprisonment and battery. *See* Dkt. 1 at 6-8. Accordingly, all of the claims "are barred by 28 U.S.C. § 2680(h)." *Metz*, 788 F.2d at 1535.

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

ROGER B. HANDBERG
  *United States Attorney*

SHARON SWINGLE
*/s/ Daniel Aguilar*
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5432*

May 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,406 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

 */s/ Daniel Aguilar*
Daniel Aguilar

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, which will serve counsel for all parties.

 */s/ Daniel Aguilar*
Daniel Aguilar

**Statutory Addendum**

## 28 U.S.C. § 2680.  Exceptions.

The provisions of this chapter and section 1346(b) of this title shall not apply to--

**(a)** Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

**(b)** Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter.

**(c)** Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, except that the provisions of this chapter and section 1346(b) of this title apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if--

>    **(1)** the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;

>    **(2)** the interest of the claimant was not forfeited;

>    **(3)** the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and

>    **(4)** the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

**(d)** Any claim for which a remedy is provided by chapter 309 or 311 of title 46 relating to claims or suits in admiralty against the United States.

**(e)** Any claim arising out of an act or omission of any employee of the Government in administering the provisions of sections 1-31 of Title 50, Appendix.

**(f)** Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

[**(g)** Repealed. Sept. 26, 1950, c. 1049, § 13(5), 64 Stat. 1043.]

**(h)** Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

**(i)** Any claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system.

**(j)** Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.

**(k)** Any claim arising in a foreign country.

**(l)** Any claim arising from the activities of the Tennessee Valley Authority.

**(m)** Any claim arising from the activities of the Panama Canal Company.

**(n)** Any claim arising from the activities of a Federal land bank, a Federal intermediate credit bank, or a bank for cooperatives.